HOMER M. PRESTON, FLETCHER GOODWILL, AND ROBERT H. JACKSON, ADMINISTRATORS WITH THE WILL ANNEXED OF SHELDON B. BROADHEAD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM A. BROADHEAD, ADMINISTRATOR, ESTATE OF ALMET N. BROADHEAD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3896, 3897.   Promulgated June 18, 1927.

> Upon the evidence, *held*, that certain stock in a public utility electric railroad corporation became worthless in 1919, thereby entitling the petitioners to a deduction for losses under section 214(a)(5) of the Revenue Act of 1918.

*Marion N. Fisher, Esq., Norman G. Chambers, C. P. A.,* and *Harold C. Anderson, C. P. A.,* for the petitioners.
*Brice Toole, Esq.,* for the respondent.

This proceeding results from the determination by the Commissioner of a total deficiency of $176,157.86 against Sheldon B. Broadhead for the calendar years 1917, 1918, 1919, and 1921, and a total deficiency of $120,202.06 against Almet N. Broadhead for the same

years, both deficiency letters being dated March 10, 1925. Both the petitioners died in 1925 after the petitions were filed. At the hearing motions for the consolidation of the appeals and the substitution of the administrators were granted. The issue in each appeal is identical. Two errors were originally assigned: (1) The disallowance of an alleged loss in 1919 of an investment in the capital stock of the Chautauqua Traction Co.; and (2) the disallowance in part of deductions for depreciation. The error respecting depreciation was waived by the petitioners at the hearing.

### FINDINGS OF FACT.

Sheldon B. Broadhead and Almet N. Broadhead were citizens of the State of New York. They were brothers and from 1910 to 1925 the sole and equal partners in and owners of the assets of the copartnership of William Broadhead & Sons. Prior to 1910, the date of their father's death, the partnership had consisted of William Broadhead and his two sons, Sheldon and Almet, who had, since 1875, been engaged in the City of Jamestown in the operation of a worsted mill known as the Broadhead Worsted Mill. In addition, the petitioners, as such partners, had organized and owned practically all the stock and the major portion of the bonds of various local public utility companies, including the Chautauqua Traction Co., the Jamestown Street Railway Co., the Jamestown, Westfield & Northwestern Ry. Co., and the Jamestown Lighting & Power Co. The petitioners also owned the majority of the common stock of the Jamestown Worsted Mill and were engaged individually or jointly in various other business enterprises in the City of Jamestown. Sheldon B. Broadhead was 79 years old and Almet N. Broadhead 74 years old at the time of their respective deaths in 1925.

The Chautauqua Traction Co., the capital stock of which forms the basis of this proceeding, was incorporated under the laws of the State of New York on February 25, 1903, with an authorized capital stock of $500,000 having a par value of $100 per share, and an authorized bond issue of $600,000. It entered into a contract with the partnership of William Broadhead & Sons whereby the latter agreed to build its road and provide its equipment in exchange for $480,000 par value of its capital stock and $500,000 par value of its first mortgage 5 per cent gold bonds.

At a later date, in part payment of advances made, the partnership received $100,000 first mortgage 5 per cent gold bonds, which, together with the aforementioned $500,000 bonds received for consideration of the contract to build the road and furnish the equipment, represented the entire bonded debt of the company.

The stock and bond investment of the partnership in the Chautauqua Traction Co. was made in the manner described above. In addition to the foregoing bond and stockholdings the partnership advanced considerable sums on open account, some of which remained unpaid.

Between 1903 and March 1, 1913, certain minor changes occurred in the amount of stock and bonds of the Chautauqua Traction Co. owned by the petitioners, so that on March 1, 1913, the partners owned 4,974 shares of stock and $530,000 par value of bonds. They continued to hold these amounts until their deaths in 1925. It was stipulated and agreed between counsel for the petitioners and counsel for the Commissioner that the 4,974 shares of stock had cost the petitioner $289,885.20; that the $530,000 bonds had cost them par; that the March 1, 1913, value of the 4,974 shares of stock was $325,223.31; and the March 1, 1913, value of the bonds was $530,000. The petitioners contend that by 1919 the stock had become worthless, and that therefore they were entitled to a deduction from gross income on account of losses in the amount of $289,885.20. The respondent has denied this contention.

Messrs. A. N. Broadhead and Sheldon B. Broadhead were president and treasurer respectively of the Chautauqua Traction Co. Both were also directors. No salaries were ever paid to them.

The traction line of the Chautauqua Traction Co. is a single track of approximately 30 miles, and runs west from Lakewood (located at the southern end of the Chautauqua Lake in Chautauqua County in the State of New York) to Ashville, thence northwesterly along the western shore of the lake to Mayville, the county seat of Chautauqua County, and then on in the same direction to Westfield and Barcelona. The distance between Lakewood and Ashville is approximately 2 miles; between Ashville and Mayville, 18 miles; between Mayville and Westfield 9 miles; and between Westfield and Barcelona, 1 mile. Barcelona is a small hamlet and borders on Lake Erie. The cities of Lakewood and Jamestown are connected by about 3 miles of track owned by the Jamestown Street Railway Co.

Between 1914 and 1918 an improved state highway was constructed on the eastern shore of Lake Chautauqua from Jamestown through Mayville to Westfield. Mayville is located at the northern end of Lake Chautauqua. Between 1914 and 1922 an improved state and county highway was constructed on the western shore of Lake Chautauqua from Jamestown to Mayville.

Connections were made along the route with four railroads and one traction line, including the Erie Railroad at Jamestown and Lake-

wood, the Pennsylvania Railroad at Mayville, and the New York Central and Nickle Plate Railroads, and the B. & L. E. Traction Co. at Westfield.

The following table shows the number of pleasure and commercial automobiles for which licenses were issued to residents of the County of Chautauqua, New York, during the years hereinafter specified:

| Year | Pleasure | Commercial | Year | Pleasure | Commercial |
|------|----------|------------|------|----------|------------|
| 1915 | 3,014 | 154 | 1920 | 8,579 | 1,421 |
| 1916 | 4,138 | 269 | 1921 | 10,927 | 1,934 |
| 1917 | 5,259 | 424 | 1922 | 13,721 | 2,763 |
| 1918 | 5,765 | 728 | 1923 | 17,469 | 2,159 |
| 1919 | 6,991 | 1,017 | 1924 | 20,825 | 3,924 |

In addition to the above, automobiles licensed by other States appeared at the lake resorts, after 1915, in substantial and increasing numbers during the summer seasons.

The population of the Chautauqua Lake region was increased materially during the summer season by visitors at the various lake resorts and by cottage owners. For example, the winter population of the Chautauqua Assembly Institution was only 1,200, while its summer population during July and August varied from 15,000 to 25,000. This population was further augmented on special days (such as Grange and G. A. R. day) when as many as 12,000 people entered the Assembly gates.

The business of the Chautauqua Traction Co. was largely passenger, with incidental freight business. The summer resort traffic produced a heavy peak load during July and August. Prior to 1918 the company operated 15 cars in the summer, making 27 regular round trips daily, while during the balance of the year 5 cars making about 17 round trips sufficed to handle the business.

Due to the improved highways and the privately owned automobiles, the number of passengers carried by the Chautauqua Traction Co. decreased materially during the years 1914 to 1919, as is shown by the following table, which gives the number of passenger fares collected, tickets or cash, during the 12-month period ended June 30 in the years stated:

*Number of passengers carried*

| Year: | | Year: | |
|-------|--------|-------|--------|
| 1914 | 945,171 | 1917 | 765,038 |
| 1915 | 849,010 | 1918 | 658,654 |
| 1916 | 733,017 | 1919 | 433,378 |

The result of operations of the Chautauqua Traction Co. for the years 1908 to 1921 is shown by the following schedule:

| | Total operating revenue | Total operating expense (depreciation added) | Taxes | Total expenses and taxes | Net revenue from railway operations | Operating ratio |
|---|---|---|---|---|---|---|
| Year ended June 30: | | | | | | |
| 1908 | $124,658.38 | $87,857.12 | $7,123.02 | $94,980.14 | $29,678.24 | 70.48 |
| 1909 | 153,092.69 | 106,577.60 | 6,706.94 | 113,284.54 | 39,808.15 | 69.62 |
| 1910 | 165,762.56 | 110,216.01 | 7,336.80 | 117,552.81 | 48,209.75 | 66.49 |
| 1911 | 176,207.58 | 150,870.81 | 8,106.09 | 158,976.90 | 17,230.68 | 85.62 |
| 1912 | 181,232.57 | 148,814.84 | 8,189.62 | 157,004.46 | 24,228.11 | 82.11 |
| 1913 | 178,340.66 | 152,058.94 | 7,922.06 | 159,981.00 | 18,359.66 | 85.26 |
| 1914 | 190,357.23 | 160,041.23 | 8,731.29 | 168,772.52 | 21,584.71 | 84.07 |
| 1915 | 180,275.55 | 156,544.97 | 8,918.43 | 165,463.40 | 14,812.15 | 86.84 |
| 1916 | 154,491.11 | 134,781.94 | 9,190.09 | 143,972.03 | 10,519.08 | 87.24 |
| July 1 to Dec. 31, 1916 | 87,586.70 | 77,021.18 | 4,261.14 | 81,282.32 | 6,304.38 | 87.94 |
| Calendar year: | | | | | | |
| 1917 | 141,089.33 | 159,593.09 | 9,053.78 | 168,646.87 | 27,557.54 | ¹113.11 |
| 1918 | ·132,265.30 | 153,437.18 | 14,134.31 | 167,571.49 | 35,306.19 | ¹116.01 |
| 1919 | 154,647.96 | 159,157.32 | 10,716.14 | 169,873.46 | 15,225.50 | ¹102.92 |
| 1920 | 182,132.94 | 185,044.14 | 11,330.13 | 196,374.27 | 14,241.33 | ¹101.60 |
| 1921 | 188,932.06 | 201,971.20 | 13,891.82 | 215,863.02 | 26,930.96 | ¹106.90 |

¹ Indicates loss.

The balance sheets showing the financial condition of the Chautauqua Traction Co. for the years ended December 31, 1917, to 1921, inclusive, are as follows:

| | 1917 | 1918 | 1919 | 1920 | 1921 |
|---|---|---|---|---|---|
| Assets: | | | | | |
| Current— | | | | | |
| Cash | $6,086.78 | $4,795.18 | $24,074.36 | $21,992.29 | $5,673.55 |
| Accounts receivable | 59,232.48 | 55,346.49 | 45,160.04 | 61,142.02 | 72,904.51 |
| Material and supplies | 3,359.69 | 6,635.20 | 5,298.11 | 10,393.88 | 3,766.95 |
| Total current assets | 68,678.95 | 66,776.87 | 74,532.51 | 93,528.19 | 82,345.01 |
| Fixed— | | | | | |
| Plant and equipment (at depreciated value) | 1,097,572.92 | 1,074,473.75 | 991,069.05 | 964,496.49 | 936,339.55 |
| Advances | 15,944.34 | 18,190.13 | 16,157.09 | 15,565.88 | 15,442.42 |
| Total fixed assets | 1,113,517.26 | 1,092,663.88 | 1,007,226.14 | 980,062.37 | 951,781.97 |
| Passive suspense | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 |
| Deficit | 406,399.40 | 490,882.88 | 590,630.54 | 648,762.91 | 719,067.83 |
| | 1,596,395.61 | 1,658,123.63 | 1,680,189.19 | 1,730,153.47 | 1,760,994.81 |
| Liabilities: | | | | | |
| Current— | | | | | |
| Bills and accounts payable | 187,560.53 | 191,869.74 | 115,068.34 | 132,936.37 | 110,581.54 |
| Fixed— | | | | | |
| Bonded debt | 600,000.00 | 600,000.00 | 600,000.00 | 600,000.00 | 600,000.00 |
| Affiliated company debts— | | | | | |
| Wm. Broadhead & Sons | 80,110.51 | 108,637.41 | 171,002.99 | 196,572.73 | 223,571.91 |
| Jamestown St. Ry. Co | 228,724.57 | 257,018.44 | 293,519.82 | 300,046.33 | 326,243.32 |
| Others | | 598.04 | 598.04 | 598.04 | 598.04 |
| Total fixed liabilities | 908,835.08 | 966,253.89 | 1,065,120.85 | 1,097,217.10 | 1,150,413.27 |
| Capital stock | 500,000.00 | 500,000.00 | 500,000.00 | 500,000.00 | 500,000.00 |
| | 1,596,395.61 | 1,658,123.63 | 1,680,189.19 | 1,730,153.47 | 1,760,994.81 |

The Chautauqua Traction Co., was required to keep its books, records and operating statistics in accordance with certain uniform rules and classification of the Public Service Commission of the State of New York.

The rates of fare adopted in 1908 consisted of a base rate of 2¼ cents a mile on through tickets, with a minimum rate of 5 cents, and with mileage books furnishing transportation as cheap as 1½ cents a mile. These rates were continued until June, 1918, at which time, with the approval of the United States Railroad Administration, the mileage books were discontinued; the minimum rate was raised from 5 cents to 10 cents, with a base rate of 3 cents per mile on through tickets. The result of this increase was a 45 per cent falling off in the number of passengers carried and a 2 per cent increase in receipts, although the company had anticipated a 20 per cent increase in revenue with only a 10 per cent loss in the number of passengers.

In July, 1918, the road was relinquished by the United States Railroad Administration. The rate increase was then contested by various municipalities along the route and hearings had before the Public Service Commission, which rendered its decision, cited as VIII P. S. C. Rep. 484, on November 25, 1919. The commission ordered a few minor changes, but in substance held that the rates complained against were not unreasonable. It analyzed the records of the Chautauqua Traction Co., covering revenues, expenses and passengers carried, investment and returns, pointed out by tables and figures cited, and the progressive loss of patronage suffered, and then suggested in its opinion that the Chautauqua Traction Co. " should without delay give careful consideration to the facts disclosed in this proceeding." The petitioner construed the above opinion of the commission as a " *direction* " that they should charge off and reduce the capital assets and investment accounts of the Chautauqua Traction Co., whereupon, during the year 1919 the partnership wrote off of its books the amount of $23,184, being a part of its investment in the Chautauqua Traction Co., and claimed this amount as a deduction on its partnership income-tax return for 1919. At the time of closing the 1919 books of the partnership a further sum was written off from the account of the traction company, but not at that time claimed as a deduction on the partnership return. In the year 1921 the sum of $77,670.62 was written off from the account of the Chautauqua Traction Co. and claimed as a deduction for the year 1921. The Commissioner has not allowed any deduction in any year on account of the alleged worthlessness of the stock of the traction company.

During 1919, the petitioners had conferences with other officers and directors of the Chautauqua Traction Co., and with officials of the neighboring Warren and Jamestown traction line in connection

with negotiations relating to a possible sale to the Warren and Jamestown line, or a merger or joint operating arrangement, but no agreement could be reached for the reason that in the opinion of the officers of the Warren and Jamestown line the road of the Chautauqua Traction Co. was not worth the bonds outstanding against it. Joint terminals for the two roads were then considered as a possible reduction of the cost of operations, but the petitioners rejected this suggestion for the reason that it would have caused an outlay of money.

In 1915 and 1916 negotiations were had with one Joseph Mayer of New York, by the petitioners looking to a sale of the Chautauqua Traction Co. property, and again in 1921 with the Niagara Power Co., but nothing resulted therefrom.

The petitioners realized in the summer of 1919 that the changes in rates and service, adopted in June, 1918, had entirely failed to remedy or substantially affect the situation of the company, and further conferences were had by them with the officers and directors of the company, at which various plans and suggestions, including the question of "complete abandonment" of the traction line were seriously considered.

It was finally determined to abandon the portion of the traction route extended from Westfield to Barcelona, and in September, 1919, a declaration of abandonment of that portion of the route was adopted and a petition for the approval thereof filed with the Public Service Commission. The limited abandonment policy adopted was one of expediency dictated by the financial situation of the traction line and the Broadhead partnership, rather than by the operating record and prospects of the traction company.

On February 26, 1920, the Public Service Commission for the Second District of the State of New York approved the petition of the Chautauqua Traction Co. requesting, under section 184, Railroad Law, that it be permitted to abandon that portion of its road between Westfield and Barcelona. The decision (Case No. 7264, cited as IX P. S. C. Rep. 107) reads in part as follows:

> In 1918, increased rates were allowed by the commission and are now in effect, but without satisfactory results. The railroad as a whole is highly unprofitable and it is absolutely necessary that all leaks must be stopped if the property is to survive. The greatest proportionate loss is on the Barcelona branch.

During 1919, the general superintendent of the Chautauqua Traction Co. arrived at the conclusion, after considering every possible resource for improving the operating conditions of the company, that there was no way in which the company could ever earn a return on its investment. It was also during 1919 that officials of the Warren-

Jamestown line reached the conclusion that the properties of the Chautauqua Traction Co. were not worth the outstanding bonds. In February, 1924, the Chautauqua Traction Co. made application to the Public Service Commission for the abandonment of the line between Mayville and Westfield, consisting of about nine miles. The record is silent as to the action taken on such application by the commission. In March, 1926, the entire line ceased operating, and at the date of the hearing before this Board the Chautauqua Traction Co. was in process of liquidation.

The general manager of the Chautauqua Traction Co. testified that the entire road could not have been salvaged in 1919 for more than $200,000.

Payments and advances by the partnership to the Chautauqua Traction Co. during 1917 to 1926, inclusive, were as follows:

| | |
|---|---|
| April 25, 1917, paid John A Olson—lumber bill_____ | $796. 08 |
| June 29, 1918, loan_____ | 3, 300. 00 |
| Feb. 28, 1921, New York Central R. R. Co.—draft for interline ticket collections_____ | 2, 502. 32 |
| May 19, 1921, loan_____ | 1, 400. 00 |

During the same period the following amounts were received by the partnership from the Chautauqua Traction Co.:

| | |
|---|---|
| May 12, 1917, cash_____ | $10, 000. 00 |
| Sept. 8, 1919, on account of bond interest_____ | 2, 300. 00 |

There were no sales or offers for sale of the stock during 1919 or the years subsequent thereto. On and after December 31, 1919, the stock of the Chautauqua Traction Co. had no market value.

### OPINION.

GREEN: The issue presented in this appeal is whether the petitioners, the sole and equal partners of William Broadhead & Sons, sustained a loss in 1919 of the cost to the partnership of its investment in the stock of the Chautauqua Traction Co. The stock was acquired prior to March 1, 1913, at a cost of $289,885.20. Its fair market value on March 1, 1913, was $325,223.31.

The section of the statute under which the loss is claimed is section 214 of the Revenue Act of 1918, which provides in part as follows:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

    \*        \*        \*        \*        \*        \*        \*

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

We think the facts as set out in the findings clearly show that the stock in question became worthless during 1919. Its cost is, there-

fore, a proper deduction from the gross income of the partnership
for that year. *Appeal of Remington Typewriter Co.*, 4 B. T. A. 880;
*Henry M. Jones v. Commissioner*, 4 B. T. A. 1286; *J. J. Melick v.
Commissioner*, 6 B. T. A. 70; *Joslyn Manufacturing & Supply Co. v.
Commissioner*, 6 B. T. A. 749.

The respondent vigorously contends that if any loss can be held
to have been sustained, it was not sustained until 1926, at which
time the Chautauqua Traction Co. ceased operating its road and went
into liquidation. In our opinion there are many reasons why the
loss was sustained in 1919.

The company was fairly prosperous from its beginning in 1908
until the close of 1916. Beginning in 1917 it sustained losses during
the remainder of its existence. During 1919, its deficit increased to
$590,630.54, or $90,630.54 in excess of its outstanding capital stock.
The company was then insolvent. The stockholders' equity was
entirely extinguished. Had it salvaged its property in that year
the bondholders would not have realized more than 33⅓ cents on the
dollar, leaving nothing for the general creditors or the stockholders.
We do not say that this fact alone would warrant a finding of the
worthlessness of the stock in 1919. The company continued to oper-
ate and it is not an unusual thing for businesses to survive a tem-
porary depression. The facts, however, in the instant case clearly
show that by 1919 it became definitely known that the Chautauqua
Traction Co. could not possibly survive. The increasing number of
automobiles, together with the improved highways which ran parallel
to the traction company's line, resulted in reducing, with the excep-
tion of 1917, the number of passengers carried. In 1919 it became
apparent that this condition would continue. The company, in 1918,
took steps to increase its passenger rates but after a year's trial this
proved to be no cure for its financial ills. The decision of the New
York Public Service Commission rendered on November 25, 1919,
was reasonably construed by the petitioners as a direction that they
should charge off and reduce their investments in the traction com-
pany. The general superintendent testified at the hearing that by
1919 he had exhausted all ideas of how to improve conditions, and
said " I could not figure out where there could be a return earned on
the investment." Officers of adjoining roads made investigations of
the traction company's affairs in 1919 with a view of possibly con-
solidating, but abandoned all such considerations as, in their opinion,
the traction company was so hopelessly insolvent that its property
was not worth the bonds outstanding against it.

The Commissioner cites the case of the *Appeal of E. O. Walgren*,
4 B. T. A. 1066, as being on all fours with the facts in the instant
case. In that case, the evidence showed that during the year in which

the loss on the worthlessness of stock was claimed, the identical stock was traded on the market at 15 cents on the dollar. It had not yet become worthless. We have repeatedly held that mere shrinkage in securities does not constitute a basis for a deduction on account of losses sustained. *W. P. Davis* v. *Commissioner*, 6 B. T. A. 1267. That is not the situation here.

In *Joslyn Manufacturing & Supply Co., supra*, the petitioner claimed that certain stock which it owned in the Southern Electric Supply Co. became worthless in 1920 although the latter company continued to operate until July, 1921. The opinion reads in part as follows:

> From the foregoing facts it is apparent that at the close of the year 1920 the financial and commercial position of the Southern Electric Supply Co. was valueless and hopeless. * * * Its financial statements showed that it was insolvent and a verification of this later disclosed that there was not during the year 1920 anything for the stockholders and no hope that anything would be left for them after liquidation. Not only were the officers *bona fide* convinced of the worthlessness of the venture, but the true condition of the business fully substantiated their judgment. The only reason why the petitioner continued any relations with the Southern Electric Supply Co. was its desire to bear its full share of the burdens of the mismanagement and misfortune of the company.

The situation of the petitioners in this proceeding is unusual in that they occupy the dual position of stockholders and bondholders, and in that the bonds held by them were pledged as collateral security for loans made to secure funds necessary for the operation of their other business activities. These bonds served as the keystone of the petitioner's credit and the desire of the petitioners to preserve and maintain their value as collateral, and this desire alone prevented the complete abandonment of the operation of the traction company in 1919, with the consequent recovery by way of salvage of an amount far from sufficient to liquidate the bonds. In 1919 the petitioners recognized the worthlessness of their stock and the total inadequacy of the assets to satisfy the bonded indebtedness and were ready and willing then and there to take their losses, not only upon the stock but upon the bonds, and refrained from doing so only because of the effect that it would have upon their credit standing as the result of the diminution in value of the bonds pledged as collateral.

As was said in the *Appeal of Remington Typewriter Co., supra*—

> The fact that the shell of a worthless corporation continues in business is no bar to the deduction of an investment in that corporation's stock when all facts clearly indicate the stock to be worthless.

We are satisfied from all of the evidence that the stock of the Chautauqua Traction Co. became worthless in 1919. The investment in such stock was therefore a loss sustained during 1919, which loss was

not compensated for by insurance or otherwise. It was incurred in a transaction entered into for profit. The Commissioner was therefore in error in refusing to allow the cost of such stock as a deduction in the partnership's return.

*Judgment will be entered on 15 days' notice, under Rule 50.*